UNITED STATES DISTRICT COURT   SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| FLORENCE BUTLER, | § | |
| | § | |
| Plaintiff, | § | |
| versus | § | CIVIL ACTION H-05-1856 |
| | § | |
| | § | |
| INTERNATIONAL BROTHERHOOD OF | § | |
| TEAMSTERS, LOCAL NO. 988, | § | |
| | § | |
| Defendant. | § | |

# Opinion on Summary Judgment

1. *Introduction.*

   A black worker sued her union because she lost her job. She claims that the union failed to represent her at a grievance hearing with her former employer because she is black. The union argues that it was unable to save her job at the hearing because she had an extensive disciplinary record. It has moved for summary judgment and will prevail.

2. *Background.*

   Florence Butler and Darla Lorance, members of Teamsters Local 988, worked as sorters for United Parcel Service. Butler is black, and Lorance is white. In July 2004, Lorance and Butler struggled with each other to take the same bag of packages from a conveyor belt. UPS fired them for "violence in the workplace." They filed grievances.

   The union arranged for a grievance committee hearing with UPS. Ron Kaluza represented both workers for the union. Butler and Lorance were invited, but they were unable to attend – their daughters began school on that day. The committee denied Butler's request to be reinstated. It returned Lorance to her job.

3. *Baseless Claim.*

   To claim that the union breached its duty of fair representation because of her race, Butler must show that it permitted a violation of the collective bargaining agreement by UPS to go unrepaired because of her race. *See Babrocky v. Jewel Food Co. & Retail Meatcutters Union, Local 320*, 773 F.2d 857, 868 (7th Cir. 1985). She cannot.

On the day that he presented the claims of Lorance and Butler, Kaluza represented another UPS worker before the committee for a different incident. The worker was black, and she was not reinstated. Butler argues that Kaluza's failure to win the jobs of the two black workers that day is evidence of discrimination. It is not. She has no evidence of the circumstances of the other black worker's termination; the court cannot assume that she was similarly situated. She is irrelevant. Kaluza's representation of her does not support Butler's claim.

Butler also claims that Kaluza worked harder for Lorance than he did for her. She said he was "befuddled and amateurish." Even if he was, she has no evidence that he was inarticulate because of her race. He presented Butler's claim no worse than he presented Lorance's. He read the written statements prepared by each of them for the committee and responded to the committee's questions. She says that his work was "certainly not what a dues paying member should expect." That may be true, but steward incompetence is not racial hostility.

4.  *Butler's Record.*

Butler claims that Kaluza gave the committee inaccurate information about her. She says that he implied that she was the aggressor when he told it that there was some physical contact between Butler and Lorance. She is wrong.

He told the committee that contact occurred, but he did not identify who initiated it. Lorance and Butler both denied that they touched the other; instead, they accused one another of grabbing the bag and the other's wrist. According to UPS, none who observed the incident was willing to say who started it out of fear that they would have to work with the aggressor if she were reinstated. Despite the conflicting opinions about the identity of the offending sorter, there is no doubt that one of them grabbed the other. Kaluza did not say that Butler grabbed Lorance.

He defended her. When UPS told the committee that Butler had entered Lorance's work area to fight with her, Kaluza countered by explaining that Butler's supervisor had taken her into Lorance's area; the evidence shows that he attempted to convince them that she was not the aggressor. He even told them that Butler was the only person who felt "threatened." He did not show her as the aggressor. Even if he had, his admission to the committee is not evidence of racial discrimination.

Butler believes that he used the phrase "cat-slapping" when he described the fight to "dehumanize" her. The impression that the phrase left on the committee does nothing to support her claim of racial discrimination. He used it to describe the actions of Butler *and* her white co-combatant. Butler's self-asserted offense at the language of the steward

is not evidence at all of his racial hostility. Language is examined according to its conventional use; neither hyper-sensitivity nor the attribution of an idiosyncratic meaning counts in fact or law.

She also accuses Kaluza of allowing UPS to focus the committee's attention on her previous transgressions. She feels that he should have spoken up for her. He did. Unfortunately, the extent of her previous disciplinary record defied minimization. Kaluza could not deny it, and he could not re-argue her past grievances. Her record was no secret; even if it were, she has no evidence that he discussed it because of her race.

According to UPS, Butler had four other grievances on her record by the time that it fired her. In January 2004, she cursed at her supervisor and swung a thermos at him – she missed. Although she denied it, others saw it. UPS says that it gave her a warning letter for unprofessional conduct. Another supervisor told her to go home, but she remained. She did not remain to work – she cried and complained to her co-workers, and she got another warning letter for insubordination.

A few days later, UPS says that she disobeyed its instructions to wait in her office and speak to her supervisor and a steward. It claims that it told her that it intended to fire her for insubordination and failure to work as directed. Her business agent got it reduced to a one-day suspension.

In March 2004, UPS says that Butler confronted another sorter, and it fired her for unprofessional conduct. She represented herself at the grievance hearing, and her termination was reduced to suspension. Butler believes that UPS also told the committee about her earlier grievances to retaliate against her for successfully representing herself during her last hearing, but she has no evidence of it. Butler created her disciplinary record, not UPS, Lorance, Kaluza, or the union. If she had not made it, then UPS could not have presented it – it is not racial discrimination.

Kaluza spoke less about Lorance's disciplinary record because she did not have one. He advised the committee that he knew very little about her because she was relatively new – she began in April 2004. UPS testified that she had no previous disciplinary actions. Kaluza deserves no credit for presenting her disciplinary history – Lorance had not worked with UPS long enough to develop a record like Butler, who had been at UPS since 1999.

5.  *Conclusion.*

Although Butler lost her job and Lorance did not, she has no evidence that Kaluza represented her differently because of her race. She has no evidence to show that UPS fired her because she is black, and the evidence that she presented about the union shows

only that she had exceeded the bounds of her employer's tolerance. At the time that these two adults fought each other at work over a bag of boxes, they were incomparable. Butler had already been fired and reinstated twice before. Lorance had not. The difference between Kaluza's presentation of the two workers' cases was due to the amount of information that UPS gave and the number of questions that the committee asked about Butler. She has no evidence to show that Kaluza and the union discriminated against her on the basis of her race. This case and the amount of resources that it wastes is a testament to a bad employee's delusions. Equality of opportunity does not absolve her years of misbehavior.

Signed April 19, 2006, at Houston, Texas.

Lynn N. Hughes
United States District Judge